NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GREATER AMERICAN LAND RESOURCES, INC., <br><br>                  Appellant, <br><br> v. <br><br> TOWN OF BRICK, NEW JERSEY, <br><br>                  Brick. | Civil Action No.: 11-cv-5308 (CCC) <br><br> **OPINION** |

**CECCHI, District Judge.**

This matter comes before the Court upon Appellant Greater American Land Resources, Inc.'s appeal of the Bankruptcy Court's July 14, 2011 ruling, which preserved the Town of Brick's ("Brick") lien regarding Debtor's property, Block 701, Lot 5. The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. After careful consideration of the parties' submissions,[1] and based upon the following reasons, the Order entered by the Bankruptcy Court is affirmed.

## I.  BACKGROUND

Greater American Land Resources, Inc. ("Debtor") appeals the decision of the Bankruptcy Court, which preserved Brick's tax lien on the Debtor's property, Block 701, Lot 5. The Bankruptcy Court found that the lien remained intact subsequent to reorganization because the reorganization plan did not address the lien so as to sufficiently provide Brick with notice of

---

[1] The Court considers any new arguments not presented by the parties to be waived. *See Brenner v. Local 514, United Bhd. of Carpenters & Joiners*, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

the lien.  Accordingly, Brick did not "participate" in the Bankruptcy proceeding such that the lien would be extinguished.

Debtor filed for reorganization under Chapter 11 of the United States Code ("Bankruptcy Code") on March 18, 2001.  In re Greater American Land Resources, Inc., 452 B.R. 532, 534 (Bankr. D.N.J. 2011).  Debtor is a company that acquires, owns, and sells real property.  Id.  The Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors and Deadlines ("Chapter 11 Notice") established July 15, 2008 as the bar date for filing proofs of claim.  Id.  On April 23, 2008, Brick filed a proof of claim, claiming the sum of $30,504.08 for unpaid real estate taxes with respect to Lot 17, Block 701.  Id. at 535.

Schedule A - Real Property, which was annexed to Debtor's bankruptcy petition, listed a fee simple interest in two parcels of real estate: Lot 5, Block 701 ("Lot 5") and Lot 17, Block 701 ("Lot 17"), both located in Brick Township, N.J.  Id.  Schedule D - Creditors Holding Secured Claims, which was also annexed to Debtor's bankruptcy petition, identified Brick Township as having a lien on Lot 17 and Plymouth Park Tax Services ("Plymouth") as having a tax sale certificate for Lot 5.  Id.  In May 2008, Debtor instituted an adversary proceeding to avoid the tax foreclosure judgment obtained by Plymouth Park Tax Services with regard to Lot 5.  That case was settled on July 25, 2008.  Id.  Debtor filed its Chapter 11 Plan and Disclosure Statement on December 24, 2009 ("Initial Plan").  Id.  On December 28, 2009, the Clerk of the Court sent a Notice of Hearing on Disclosure Statement to all creditors, including Brick. (Appellant Br. 5.)

The Initial Plan was amended by the filing of the First Modified Plan of Reorganization ("Modified Plan") on May 5, 2010.  (Id. at 6.)  Both the Initial and Modified Plans listed Debtor as the owner of Lot 5, not Plymouth Park Tax Services.  In re Greater American Land Resources,

Inc., 452 B.R. at 535-36.  Brick did not object to the Modified Plan.  (Appellant Br. 5.)  The Modified Plan was confirmed on July 30, 2010.  452 B.R. at 536.

Three months after the Modified Plan was confirmed, Brick moved for relief from the automatic stay because its secured claim on Lot 17 had not been paid.  Id.  Brick also sought permission to amend its proof of claim to include the taxes due on Lot 5.  Id.  Brick claimed that it had believed that the Lot 5 property had been foreclosed by Plymouth, therefore it did not previously file a proof of claim with regard to taxes owed on Lot 5.  Id.  In response, the Debtor contended that it was too late for Brick to demand payments with respect to Lot 5.  Id.  The Bankruptcy Court ruled that Brick's lien on Lot 5 survived the bankruptcy and that Brick could pursue its claim against Debtor.  Id. at 544.

## II.    LEGAL STANDARD

Federal district courts have jurisdiction to review bankruptcy decisions under 28 U.S.C. § 158(a).  In reviewing a bankruptcy decision on appeal, a district court may not set aside findings of fact unless they are "clearly erroneous."  Fed. R. Bankr. P. 8013; Chemetron Corp. v. Jones, 72 F.3d 341, 345 (3d Cir. 1995).  A factual finding is "clearly erroneous" where, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  Anderson v. Bessemer City, 470 U.S. 564, 573 (1985) (citing United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)).  A reviewing court may not reverse a finding "simply because it is convinced that it would have decided the case differently."  Id.  Accordingly, "where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."  Id. (citing United States v. Yellow Cab Co., 338 U.S. 338, 342 (1949)).

3

A bankruptcy court's legal conclusions are subject to de novo, or plenary, review.  In re Nickels Midway Pier, LLC, 348 F. App'x 781, 783 (3d Cir. 2009) (citing In re Schick, 418 F.3d 321, 323 (3d Cir. 2005)).  If the appeal "calls for reviewing the Bankruptcy Court's application of law to the facts of [the] case . . . whether the application of law to fact was proper, is reviewed as an ultimate fact and is subject to plenary review because it is, essentially, a conclusion of law."  In re 15375 Memorial Corp. v. Bepco, L.P., 589 F.3d 605, 616 (3d Cir. 2009) (citation omitted).

## III.    DISCUSSION

Debtor contends that the Bankruptcy Court erred when it decided that Brick's lien on Lot 5 was not extinguished when the Modified Plan was confirmed.  Section 1141 of the Bankruptcy Code provides:

> (a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, . . . and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor . . . is impaired under the plan and whether or not such creditor . . . has accepted the plan.
> (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
> (c) Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.
> (d) (1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan-
>     (A) discharges the debtor from any debt that arose before the date of such confirmation.

11 U.S.C. § 1141.

The confirmation of a Chapter 11 plan effectively acts as a contract, binding the parties.

JCB, Inc. v. Union Planters Bank, NA, 539 F.2d 862, 870 (8th Cir. 2008).  "[T]he discharge of all existing claims . . . upon confirmation of a Chapter 11 plan is unambiguous. . . .[T]he

discharge provided by Section 1141(d) presumes that, in the process of formulating and voting on a reorganization plan, all classes of claimants will be able to use whatever leverage they may have, such as priority status, to effect the best treatment they can obtain for their particular claims." In re Benjamin Coal Company, 978 F.2d 823, 827 (3d Cir. 1992). Once the reorganization plan is approved, each claimant gets a "new" claim based on the treatment accorded to it in the plan. Id. Essentially, an order confirming a plan of reorganization is entitled to res judicata. Stoll v. Gottlieb, 305 U.S. 165, 170-71 (1938).

A secured creditor's lien may, however, be allowed to pass through bankruptcy unaffected, pursuant to 11 U.S.C. § 506. Section 506(d)(2) provides, in relevant part:

> (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
> (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d)(2). In Relihan v. Exchange Bank, 69 B.r. 122, 126-27 (S.D. Ga. 1985), the court relied on § 506(d), holding that even though the creditor did not file a proof of claim or take action with respect to the debtor's bankruptcy proceedings, the creditor's inaction did not extinguish the bank's pre-petition lien, as the creditor could look to the lien to satisfy the debt. See also FDIC v. Union Entities, 83 F.3d 1020, 1025 (8th Cir. 1996) ("A well-established principle of bankruptcy law is that liens pass through bankruptcy proceedings unaffected. This means that a secured creditor need not file a claim in a bankruptcy proceeding to preserve its lien.") (internal citations omitted) (citing Long v. Bullard, 117 U.S. 617, 620-21 (1886); Matter of Tarnow, 749 F.2d 464, 465-66 (7th Cir. 1984)).

Debtor argues that the finality of the Modified Plan should "override" any concerns regarding due process. (Appellant Br. 13.) Debtor also asserts that under the factors set forth in

In re Ahern Enterprises, Inc., 507 F.3d 817 (5th Cir.2007), Brick's Lien on Lot 5 should be extinguished. (Id. 16.) The Court will address each one of these arguments in turn.

### A. Brick Did Not Receive Adequate Notice Regarding the Tax Lien on Lot 5

Debtor asserts that Brick received "notice and an opportunity to object" to the Modified Plan; therefore, Brick's lien should have been extinguished upon confirmation of the Modified Plan. (Appellant Br. 13.)  Brick challenges this contention, claiming that it did not receive adequate notice of the taxes due on Lot 5 during the Bankruptcy proceedings; as such, due process requires that its lien on Lot 5 was not extinguished by the confirmation of the Debtor's reorganization plan. (Appellee Br. 7-10.)

The finality of a confirmed reorganization plan is an important goal of bankruptcy law. See In re Szostek, 886 F.2d 1405, 1413 (3d Cir. 1989) ("[O]nce the [debtors'] plan was confirmed, it became final . . . and, absent a showing of fraud . . . it could not be challenged . . . for failure to pay [the creditor] the present value of its claim."); In re Fesq, 153 F.3d 113, 120 (3d Cir. 1998) ("[R]evoking a confirmation order is a measure that upsets the legitimate expectation of both debtors and creditors.").  However, due process is also an important consideration in bankruptcy proceedings.  Due process requires:

> notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance.

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) (citations omitted). Due process requirements are applicable in bankruptcy proceedings.  See Bank of Marin v. England, 385 U.S. 99, 102 (1966).  The Third Circuit Court of Appeals stated that it would not "treat confirmed bankruptcy plans as res judicata with respect to the claims of creditors who did

not receive notice that was sufficient under the circumstances." In re Mansaray–Ruffin, 530 F.3d 230, 239 (3d Cir.2008); see also In re Barton Indus., 104 F.3d 1241, 1245 (10th Cir. 1997) (citing Reliable Elec. Co., Inc. v. Olson Const. Co., 726 F.2d 620, 622-23 (10th Cir. 1984)) ("[A] creditor's claim is not subject to a confirmed bankruptcy plan when the creditor is denied due process because of inadequate notice."). In Barton, the court determined that the creditors, who held a security interest in return insurance premiums, did not receive adequate notice to satisfy due process since the debtor's plan and disclosure statement did not specifically reference the return insurance premiums. Id. at 1245-46.

In order to satisfy due process requirements, a creditor "had to receive notice that specified the treatment of [its] class of claim, and allowed [it] to make an informed judgment about [the debtor's] Chapter 11 plan." Id. at 1245 (citing 11 U.S.C. §§ 1123(a)(3), 1125(a)). "A creditor's actual knowledge regarding the bankruptcy proceeding does not eliminate due process concerns." In re Harbor Tank Storage, 385 F.2d 111, 114-16 (3d Cir. 1967) (finding that even though the creditor had knowledge of the debtor's bankruptcy proceeding, it had the right to file an untimely proof of claim because it was not sent any notices as required under the Bankruptcy Act).

Here, Brick did not have sufficient notice regarding its lien on Lot 5. At the time Debtor filed for reorganization under Chapter 11, Plymouth held a tax sale certificate for Lot 5. (Appellee Br. 3.) It was not until July 25, 2008, when Debtor and Plymouth settled, that Debtor reacquired Lot 5. (Id.) Brick did not receive a notice of settlement and the settlement was not recorded in Ocean County. (Id.) Debtor's Schedule D - Creditors Holding Secured Claims - listed Brick only as having a lien against Lot 17, not Lot 5. (Id.) In fact, it listed Plymouth Park Tax Services as holding the tax sale certificate for Lot 5. (Id.) The Modified Plan listed Debtor

as the owner of Lot 5, however it did not provide treatment for Brick's lien on Lot 5. (Id. at 3-4.) It also listed "pre-petition tax obligations for real estate taxes" in the amount of $30,504.08, which is the amount claimed by Brick only for Lot 17. (Id. at 4.)

According to Brick, it was not until December 28, 2010, more than a year after Debtor filed its First Modified Plan of reorganization and First Modified Disclosure Statement, that Debtor officially became the owner of record for Lot 5. (Id. at 5.) The Modified Plan neither mentioned the disputed claim over Lot 5 nor addressed Brick's lien on Lot 5. (Id. at 4.) Based on these findings, the Court concludes that Brick did not receive adequate notice or satisfaction of due process with regard to the lien on Lot 5.

## B. Brick's Lien is Preserved Under <u>Ahern</u>

The Bankruptcy Court applied the factors set forth in <u>In re Ahern Enterprises, Inc.</u>, 507 F.3d 817 (5th Cir.2007), to this matter in order to determine whether Brick's lien could be voided under § 1141(c). <u>In re Greater American Land Resources, Inc.</u>, 452 B.R. at 542-43. In order for a lien to be voided, "(1) the plan must be confirmed; (2) the property that is subject to the lien must be dealt with by the plan; (3) the lien holder must participate in the reorganization; and (4) the plan must not preserve the lien." <u>In re Ahern Enterprises, Inc.</u>, 507 F.3d at 822. The Bankruptcy Court concluded that Brick did not "participate" in the bankruptcy so as to allow its lien on Lot 5 to be extinguished and its tax lien was not addressed by the Modified Plan. Therefore, Brick's lien survived <u>in rem</u> pursuant to § 506(d). 452 B.R. at 544.

The first <u>Ahern</u> prong is satisfied in this case as the Debtor's reorganization plan was confirmed on July 30, 2010. Id. at 536. To determine the second and third prongs, the issues are whether the plan dealt with the property at issue and whether the creditor participated in the reorganization. A lien may be extinguished when the property to which the lien would attach is

8

dealt with in the plan.  See In re Regional Building Systems, Inc., 254 F.3d 528, 530 (4th Cir. 2001).  In Regional, the creditor was listed as having an unsecured claim, filed two proofs of claim in the debtor's bankruptcy case, and participated as a member of the official committee of unsecured creditors.  254 F.3d 528, 530 (4th Cir. 2001).  Later, the bankruptcy court approved a settlement from an unrelated lawsuit which resulted in the payment of approximately $5 million to the debtor and shortly after, confirmed the debtor's Chapter 11 plan.  Id.  After the plan was confirmed, the creditor filed an amended proof of claim, attempting to assert a lien on the debtor's settlement funds.  Id.  The court found that the creditor's lien was extinguished by confirmation of the plan because the property, the settlement funds, to which the lien would attach, was dealt with by the plan.  Id. at 532.

Similarly, in In re Penrod, 50 F.3d 459, 461 (7th Cir. 1995), the creditor filed a proof of claim for its prepetition security interest.  Although the debtor's plan did not provide any treatment for the creditor's lien, it did provide that the claim would be paid in full with interest, such that the creditor's interest was addressed.  Id. at 464.  Accordingly, the appeals court found that the secured creditor's lien was extinguished by the confirmation of debtor's Chapter 11 reorganization plan.  Id.

Here, in contrast, the Debtor's plan did not deal with payment of Brick's claim.  As the Bankruptcy Court pointed out, "in essence Brick held two claims. That is, it held two different tax liens on two different properties."  452 B.R. at 543.  It is clear that Brick participated in the reorganization with respect to Lot 17 as it filed a proof of claim regarding the tax lien on Lot 17 on April 23, 2008.  See Id. at 535.  It is also apparent that the Modified Plan dealt with Lot 17, since the plan listed Lot 17 as property owned by the Debtor and it specifically identified Brick's claim on Lot 17 as a Class 1 secured claim.  Id. at 535-36.  Further, the Modified Disclosure

9

Statement indicated that the Debtor owed real estate taxes in the amount of $30,504.08, which is in reference to the claim filed by Brick with regard to Lot 17. (See Appellee Br. 4.)

With regard to Lot 5, the Court agrees with the Bankruptcy Court that Brick did not "'participate' in the Debtor's bankruptcy sufficiently to allow its lien on Lot 5 to be extinguished and its tax lien was not dealt with by the Modified Plan." In re Greater American Land Resources, Inc., 452 B.R. at 544. The Modified Plan identifies Lot 5 as Debtor's property, but it does not specify Brick's prepetition tax lien. (Appellee Br. at 3-4.) Moreover, Brick did not file a proof of claim for taxes due on Lot 5 because, according to Brick, it understood Plymouth to be the owner of the property at the time. (Id. at 3.) Unlike the creditors in Penrod and Regional, Brick did not file a proof of claim for it lien on Lot 5 and its claim was not listed in the Debtor's plan. Furthermore, the unpaid taxes on Lot 5 were not treated in the plan at all. Accordingly, the Court finds that under Ahern, Brick's lien is preserved following the confirmation of the Debtor's reorganization plan.

## IV.     CONCLUSION

For the foregoing reasons, the decision of the Bankruptcy Court is affirmed. An appropriate Order accompanies this Opinion.

_____
**CLAIRE C. CECCHI, U.S.D.J.**

DATED: May 17, 2012

10